**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: May 9 2018

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 17-31398 |
| | ) | |
| Jeffrey L. Cheney and | ) | Chapter 7 |
| Rosette Smith-Cheney, | ) | |
| | ) | Adv. Pro. No. 17-3086 |
| Debtors. | ) | |
| | ) | Hon. Mary Ann Whipple |
| Raymond P. Johnston, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Jeffrey L. Cheney, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OF DECISION REGARDING DEFENDANTS' MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT

This adversary proceeding is before the court on Defendants' Motion for Summary Judgment [Doc. # 13], Plaintiffs' response [Doc. # 20] and Defendants' reply [Doc. # 22]. Also before the court is Defendants' motion to strike portions of the affidavits filed by Plaintiffs. [Doc. # 21].

Defendants are the joint debtors in the underlying Chapter 7 case pending in this court. This proceeding involves the dischargeability of a debt allegedly owed to Plaintiffs by Defendants for fraudulently inducing them to enter into a certain construction contract. Plaintiffs contend that the debt is non-dischargeable under 11 U.S.C. § 523. Although Plaintiffs do not identify a specific subsection of § 523,

the court construes their complaint as alleging nondischargeability under § 523(a)(2)(A). For the reasons that follow, the court will grant in part and deny in part Defendants' Motion to Strike and will grant Defendants' Motion for Summary Judgment with respect to Plaintiffs' claim against Defendant Rosette Smith-Cheney and will deny it with respect to Plaintiffs' claim against Defendant Jeffrey Cheney.

## MOTION TO STRIKE

Defendants identify seven paragraphs in Diane Johnston's affidavit (paragraphs 26, 27, 38, 48, 50, 53 and 54) and eight paragraphs in Raymond Johnston's affidavit (paragraphs 15, 25, 33, 35, 44, 46, 49, and 57) as containing inadmissible expert opinions and expert opinions of third parties regarding construction measurement standards and building codes. An affidavit used to support a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters asserted." Fed. R. Bankr. P. 7057; Fed. R. Civ. P. 56(c)(4).

Plaintiffs' affidavits both state that prior to the construction project at their home that is the subject of this adversary proceeding, neither of them had been involved in any residential or commercial construction project. [Pl. Ex. 1, Diane Johnston Aff., ¶ 22; Pl. Ex. 2, Raymond Johnston Aff., ¶ 22]. And their affidavits do not otherwise show that they are competent to testify regarding construction measurement standards and building codes. The court will therefore strike only statements in the following paragraphs that state requirements of the applicable building code and hearsay statements regarding what Plaintiffs were told or what they learned from third parties: paragraphs 38, 48, 50, 53, and 54 of Diane Johnston's affidavit and paragraphs 33, 35, 44, 46, 49 and 57 of Raymond Johnston's affidavit. Additional statements regarding Plaintiffs' firsthand observations that are included in those paragraphs and paragraphs 26 of Diane Johnston's affidavit and 15 of Raymond Johnston's affidavit will not be stricken. The court will also strike the second and third sentences of paragraph 27 of Diane Johnston's affidavit and paragraph 25 of Raymond Johnston's affidavit, which refer to the usual or general scale for floor plans.

Defendants also challenge paragraph 71 of Diane Johnston's affidavit and paragraph 63 of Raymond Johnston's affidavit as self-serving conclusory statements, both of which state: "Based upon the (sic) our experience and our observations, it is clear that Jeffrey L. Cheney was not capable of building the addition we hired him for, contrary to all the representations both he and his wife made to us." [Pl. Ex. 1, Diane Johnston Aff., ¶ 71; Pl. Ex. 2, Raymond Johnston Aff., ¶ 63]. The court will strike these statements as they are conclusory statements of an ultimate fact to be decided in this proceeding. *See Harrah's Entm't Inc. v. Ace Am. Ins. Co.*, 100 Fed. App'x 387, 394 (6th Cir. 2004) ("It is well settled that courts should disregard

2

conclusions of law (or 'ultimate fact') found in affidavits submitted for summary judgment.").

# FACTUAL BACKGROUND

This proceeding involves a home remodeling contract that was to be completed by Defendant Jeffrey Cheney ("Cheney") at Plaintiffs' home. The following facts are not in dispute. The contract, signed by both Plaintiffs Raymond and Diane Johnston, sets forth the company name of JLC Home Improvement LLC ("the LLC"). [Pl. Ex. 2, ¶ 26 and exhibit A attached thereto]. Cheney, who is the sole member/owner of the LLC, signed the contract without indicating his capacity as member of the LLC. [*See id.*]. The contract was entered into in June of 2016. [Def. Ex. A, ¶ 12]. Plaintiffs paid $32,749.29 as a down payment for materials. [Pl. Ex. 1, ¶ 29 and attached exhibit A, p.1]. The contract then required Plaintiffs to make weekly payments of $3,109.00. [*Id.* at ¶ 28 and attached exhibit A, p. 4].

Before entering into the contract, Plaintiffs discussed their renovation plans with Defendants. [*See* Pl. Ex. 2, ¶¶ 6, 11, 13, 17]. Diane Johnston had made a rough sketch that was provided to Cheney and that included interior room sizes. [*Id.* at ¶ 13]. Plaintiffs emphasized that the rough sketch room sizes were finished interior room sizes. [*Id.* at ¶ 17]. Both Cheney and his wife indicated that Cheney was able to do the work for them. [*See id.* at ¶¶ 6, 9, 11, 17, 18]. Cheney told Plaintiffs they would not need to hire an architect to draw plans for the new construction and instead drew the plans himself. [*Id.* at ¶¶ 19, 25]. The plans were approved by the Wood County Engineers Office on June 10, 2016. [Def. Ex. A, ¶ 14].

Before the new construction was to begin, the contract required Cheney to detach an older portion of Plaintiffs' house, which would be demolished by another contractor, from a 1970's addition, to which the new construction would be attached. [Doc. # 20, Pl. Ex. 2, ¶ 27, ¶ 26 and exhibit A attached thereto, unnumbered p. 3]. It also required him to "build a temporary wall and seal up [the]1970's addition." [*Id.* at ¶ 26 and exhibit A attached thereto at unnumbered p. 3]. After seeing light through the ceiling where the demolished portion of the house had been, Plaintiffs asked Cheney to properly seal the 1970's addition. [*Id.* at ¶ 28]. Cheney indicated "that it was sealed fine" and refused to allow his crew to further seal the addition. [*Id.* at ¶¶ 28, 32]. As damage had occurred to the interior of Plaintiffs' home when rain entered through the unsealed portion of the house, Raymond Johnston sealed the area himself to prevent further damage. [*Id.* at ¶ 32].

The stairs going to the basement that were built by Cheney did not provide sufficient headroom, were not anchored to a wall and the steps were not of a uniform height. [*Id.* at ¶ 35]. Cheney admitted that he was not experienced at stair building. [*Id.*]. The report regarding the building inspection completed on September 14, 2016, states that the stairs to the basement were improperly built and were not in compliance

3

with the Residential Code of Ohio. [Pl. Ex. 3, p. 2]. The report further states that the following items also were not in compliance with the Residential Code of Ohio and/or manufacturer's specifications:

> Trusses cut at end/bottoms at plate area. Lacking joist hangers on roof trusses into girder truss. Shim all headers. Cathedral wall framing. Additional roof truss bracing required. Cathedral wall framing at existing needs framed to comply with Ohio Energy Code. . . .First floor I-Joists framing (improper headers, I-joists utilized as beams, Sturdy box utilized as beams).

[*Id.*].

The size of the bedroom constructed by Cheney was smaller than what Plaintiffs had planned and resulted in less space for the bathroom and walk-in closet than what was provided for in Diane Johnston's sketch that was given to him. [Pl. Ex. 2, ¶¶ 39-40]. Cheney also constructed the entryway to the bedroom in a manner that would result in it being only thirty inches wide when covered with drywall. [Pl. Ex. 1, ¶ 45]. He told Diane Johnston that she was wrong when she told him it needed to be no smaller than thirty-two inches finished. [*Id.*]. However, Cheney returned the next day and rebuilt the entryway. [*Id.*]. When asked why he changed his mind, Cheney stated that "he talked to a man 'who knew about these things' and he advised him it couldn't be under 32" finished per code, and that he had to change it." [*Id.*]. Another issue arose when Cheney positioned the overhang over the front door so low that the storm door could not be opened without hitting it. [Pl. Ex. 2, ¶ 44]. On September 9, 2016, Cheney left the job and did not return. [*Id.* at ¶ 54].

Cheney has designed and constructed numerous home remodeling and construction projects. [Def. Ex. A, ¶ 6]. Prior to a complaint being filed by Plaintiffs, no claim or lawsuit had ever been brought against either the LLC or Cheney. [*Id.* at ¶ 7]. On December 30, 2016, Plaintiffs commenced an action in the Wood County, Ohio, Court of Common Pleas ("State Court"), alleging, among other things, that they were fraudulently induced to enter in the renovation contract when Defendants knowingly and with intent to deceive misrepresented that Cheney could prepare plans for and complete the renovation project that they had discussed with him and that Cheney had previously successfully constructed projects on such a scale as Plaintiffs' proposed project. [Doc. # 1, Ex. A, ¶¶ 30-33].

Defendants filed their petition for relief under Chapter 7 of the Bankruptcy Code on May 5, 2017. [Case No. 17-31398]. Plaintiffs timely commenced this adversary proceeding, alleging that they were fraudulently induced to enter into the contract for renovation of their home and that as a result Defendants owe them a debt that is nondischargeable. Plaintiffs' dischargeability complaint incorporates their complaint filed in State Court. [*See* Doc. # 1, ¶ 2].

4

# LAW AND ANALYSIS

Defendants offer evidence of Cheney's prior construction experience and argue that Plaintiffs can provide no evidence of any misrepresentation by them and no evidence that Defendants knew any representation was false. Defendants also argue that Plaintiffs' claims must fail because Defendants were not parties to the home renovation contract at issue. For the reasons discussed below, the court will grant Defendants' Motion for Summary Judgment with respect to Plaintiffs' claim against Defendant Rosette Smith-Cheney and will deny it with respect to Plaintiffs' claim against Defendant Jeffrey Cheney.

## I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to issues on which the nonmoving party bears the burden of proof, the burden on the moving party may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325. (*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.*

## II. Privity of Contract

The court first addresses Defendants' argument that Plaintiffs' claim alleging fraudulent inducement to enter the contract at issue must fail because such a claim under Ohio law requires privity of contract between the claimant and the alleged wrongdoer. This argument fails for several reasons.

First, Defendants rely on the third element set forth in *Cross v. Ledford*, 161 Ohio St. 469 (1954), which the Ohio Supreme Court states is necessary to be proved in an action to rescind a contract procured by fraudulent representations of a party. The third element states, "[s]uch representations must be made by

5

one party to the other with knowledge of their falsity." *Id*. at 475.  There is no statement regarding privity of contract.  In any event, the plaintiffs in that case were attempting to rescind a contract, which, of course, would require privity.  *Cremeans v. Robbins*, No. 99CA2520, 2000 WL 781215, at *8, 2000 Ohio App. LEXIS 2753, *28 (Ohio App. June 12, 2000) (citing cases and stating "[t]o properly maintain an action to rescind a contract, there must be privity of contract between the plaintiff seeking rescission and the defendant against whom rescission is sought").  To the extent the Ohio Supreme Court's reference in *Ledford* to "one party to the other" is a reference to parties to the contract and not simply to parties in the case, the case is distinguishable since Plaintiffs in this case are not seeking to rescind a contract.

Second, nondischargeability of a debt based on fraud under § 523 as alleged by Plaintiffs is governed by federal, not state, law.  *Sequatchie Mountain Creditors v. Lile*, – B.R. –, 2018 WL 1453614, *13, 2018 U.S. Dist. LEXIS 48386, *35 (N.D. Ohio 2018) (citing cases); *Livingston v. Transnation Title Ins. Co. (In re Livingston)*, 372 Fed. App'x 613, 618 (6th Cir. 2010) (explaining that fraud under § 523(a)(2)(A) is defined by federal bankruptcy law).  As discussed below, proof of a fraudulent misrepresentation under § 523(a)(2)(A) does not require proof that the parties are in privity of contract.

Third, while members, managers and officers of a limited liability company may not generally be held liable for the debts of the company, Ohio Rev. Code § 1705.48 (A) & (B), they may be held personally liable for their own conduct, Ohio Rev. Code § 1705.48(D); *cf. Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 113 (B.A.P. 6th Cir. 2007)(explaining that under Ohio agency law, corporate officers can be held personally liable for a tort if the officers "take part in the commission of the act or if they specifically directed the particular act to be done, or participated or cooperated therein").

### III. 11 U.S.C. § 523(a)(2)(A)

Under § 523(a)(2)(A), a debt is excepted from discharge to the extent it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  In order to except a debt from discharge under § 523(a)(2)(A) based upon a misrepresentation, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money or services through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.  *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th

Cir. 1998).[1]

A finding of fraudulent intent may be made on the basis of circumstantial evidence or from the debtor's "course of conduct," as direct proof of intent will rarely be available. *See Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999). However, where a debtor's subjective intent is at issue, summary judgment is generally inappropriate unless all reasonable inferences defeat the claims of the opposing party. *Sicherman v. Rivera (In re Rivera)*, 338 B.R. 318, 327 (Bankr. N.D. Ohio 2006) (citing *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir.2002) ("When the defendants' intent is at issue, summary judgment is particularly inappropriate") and *Gertsch v. Johnson & Johnson Finance Corp. (In re Gertsch)*, 237 B.R. 160, 165 (B.A.P. 9th Cir. 1999) ("Where intent is at issue, summary judgment is seldom granted, however, summary judgment is appropriate if all reasonable inferences defeat the claims of one side")).

Defendants argue that Plaintiffs have produced no evidence that they misrepresented Cheney's ability to design plans for the new addition and no evidence that he could not successfully complete the addition. However, Plaintiffs have provided evidence, which, if believed, shows that Cheney did not properly seal their house to protect it from rain damage after demolishing a portion of the house, did not properly construct the stairs to the basement, and that wall and roof trusses were not installed properly and improper headers were installed. In addition, Cheney initially constructed an entryway in a manner that did not comply with the applicable building code and improperly positioned the overhang over the front door. According to Plaintiffs, and notwithstanding the fact that the Wood County Engineers Office approved the plans for the addition, Cheney erroneously designed plans for rooms smaller in size than the room sizes they had discussed with him before entering into the renovation contract. In light of the many problems that arose in connection with Cheney's work on the addition to Plaintiffs' home, as well as with his design of the plans for the addition, there is a genuine issue for trial as to the truth of Defendants' representations regarding Cheney's ability to design plans for, and successfully complete, the addition sought by Plaintiffs.

Defendants also argue that Plaintiffs have produced no evidence that Defendants knew their representations were false and that they intended to thereby induce Plaintiffs to enter into the renovation contract. Notwithstanding the prior construction experience of Cheney, according to Plaintiffs, Cheney admitted that he was not experienced in building stairs and, according to the building inspection report, he

---

[1] The parties cite Ohio law in setting forth the elements of, and burden of proving, a fraudulent inducement claim. However, as discussed above, "nondischargeability of a debt under 11 U.S.C. § 523(a)(2)(A) is governed by federal, not state, law." *Sequatchie Mountain Creditors v. Lile*, – B.R. –, 2018 WL 1453614, *13 (N.D. Ohio 2018); *Livingston v. Transnation Title Ins. Co. (In re Livingston)*, 372 Fed. App'x 613, 618 (6th Cir. 2010) (explaining that fraud under § 523(a)(2)(A) is defined by federal bankruptcy law).

did not properly construct the stairs to their basement. This constitutes at least some evidence that Cheney knew his representations were false at the time they were made. The fact that Cheney has never had a claim brought against him with respect to any home remodeling or construction project does not negate such evidence. Because a reasonable inference can be drawn from Plaintiffs' evidence that Cheney misrepresented his abilities with the intent to deceive Plaintiffs, he is not entitled to summary judgment on Plaintiff's dischargeability claim.

Plaintiffs offer no evidence, however, that Defendant Rosette Smith-Cheney knew her representations were false at the time they were made or that she made any representation with gross recklessness as to its truth. Defendant Rosette Smith-Cheney is therefore entitled to judgment as a matter of law.

### **CONCLUSION**

The court will grant Defendants' Motion to Strike only to the extent set forth above. The court will grant Defendants' Motion for Summary Judgment with respect to Plaintiffs' claim against Rosette Smith-Cheney and will deny it with respect to Plaintiffs' claim against Jeffrey L. Cheney.

The court will enter separate orders in accordance with this Memorandum of Decision.

###

8

17-03086-maw    Doc 23    FILED 05/09/18    ENTERED 05/09/18 09:59:38    Page 8 of 8